UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANE E. O'BRIEN,<br>        Plaintiff,<br><br>        v.<br><br>WILMINGTON TRUST NATIONAL<br>ASSOCIATION, as Successor<br>Trustee to CITIBANK, N.A., as<br>Trustee for Holders of BEAR<br>STEARNS ALT-A TRUST 2006-6<br>MORTGAGE PASS-THROUGH<br>CERTIFICATES SERIES 2006-6,<br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  C.A. No. 17-cv-11228-MLW<br>)<br>)<br>)<br>)<br>)<br>) |

MEMORANDUM AND ORDER

WOLF, D.J.                                    November 30, 2020

I.   INTRODUCTION

     Plaintiff Jane E. O'Brien filed this action in Massachusetts

Superior Court on June 5, 2017, seeking an injunction to stop

foreclosure on her home, a declaratory judgment to quiet title to

her home, and damages for intentional infliction of emotional

distress. See Verified Compl. (Dkt. No. 1-1). After the

Massachusetts Superior Court granted plaintiff's motion for

preliminary injunction, defendant Wilmington Trust National

Association[1] removed the case to this court and answered the

complaint. See Dkt. Nos. 1, 4. Defendant subsequently moved for

_____

[1]    Defendant Wilmington Trust National Association was sued in
its capacity as Successor Trustee to CitiBank, N.A., as Trustee
for Holders of Bear Stearns Alt-A Trust 2006-6 Mortgage Pass-
Through Certificates Series 2006-6 (the "Trust").

judgment on the pleadings and to dissolve the preliminary injunction. See Dkt. No. 11 (the "Motion"). Recently, defendant filed a second motion to dissolve the preliminary injunction based on allegations that plaintiff has not complied with it by failing to pay into escrow $8,000 per month for use and occupancy, and is $248,000 in arrears on such payments. See Dkt. No. 34.

For the reasons explained below, the court is allowing the motion for judgment on the pleadings on all counts and dissolving the preliminary injunction.

II.   PROCEDURAL HISTORY

On June 5, 2017, plaintiff filed the complaint in the Massachusetts Superior Court for Norfolk County, seeking both injunctive relief and damages. See Dkt. No. 1-1. Following briefing and a hearing, the Superior Court issued a Preliminary Injunction. See Endmt. Order (Dkt. No. 5, at 66 of 218); Prelim. Inj. (Dkt. No. 5, at 139 of 218). The Preliminary Injunction enjoins defendant from foreclosing on the Property. Id. It also requires plaintiff to obtain insurance, pay future real estate taxes, and pay into escrow $8,000 each month, beginning September 1, 2017, for use and occupancy of the property. Id.

On July 3, 2017, defendant removed the case to this United States District Court based on diversity jurisdiction pursuant to 28 U.S.C. §1332. See Notice of Removal ¶¶4-8 (Dkt. No. 1). On March 30, 2018, defendant filed the Motion. See Dkt. No. 11.

Plaintiff did not timely oppose the Motion. Instead, she belatedly moved for an extension of time, without the certificate of consultation required by Rule 7.1 of the Local Rules of the United States District Court for the District of Massachusetts (the "Local Rules"). See Dkt. No. 13. However, because defendant opposed extending plaintiff's time to respond to the Motion, the court ordered her to file a reply by May 8, 2018 instead of ordering the parties to confer. See Dkt. Nos. 14, 15. Plaintiff did not file a timely reply. On May 16, 2018, she filed another motion for extension of time (Dkt. No. 16), which defendant again opposed (Dkt. No. 17).

Although the court noted that plaintiff had failed to show good cause for failing to file a reply by May 8, 2018, the court also noted the strong preference for cases being decided on the merits. See Dkt. No. 18. Therefore, the court ordered plaintiff to file her opposition to the Motion by May 23, 2018, and stated that "no further extensions [would] be granted." See Dkt. No. 18. The court also ordered plaintiff's counsel to confer with defense counsel regarding payment by counsel of the reasonable attorneys' fees defendant's counsel had incurred in opposing the motion for extension of time. Id. Plaintiff did not file her opposition to the Motion by May 23, 2018.

On May 31, 2018, defense counsel reported to the court that it had sought to confer with plaintiff's counsel regarding the

3

attorneys' fees incurred in opposing the motion for extension of time. See Dkt. No. 19. Defense counsel requested additional time to get approval from defendant regarding the settlement offered by plaintiff's counsel. Id. On June 8, 2018, defense counsel reported that defendant had accepted plaintiff's counsel's offer, but had not heard from him since. See Dkt. No. 20. Defense counsel asked the court to order plaintiff's counsel to pay $2,000 to defense counsel by June 22, 2018. Id. Plaintiff's counsel eventually paid this amount. See Gens Letter 2 (Dkt. No. 30).

On June 10, 2018, plaintiff finally filed her opposition to the Motion. See Dkt. No. 21. Defendant promptly moved to strike the opposition as untimely. See Dkt. No. 24. Later, defendant moved in the alternative for leave to file a reply in support of the Motion. See Dkt. No. 26. The court permitted defendant to file a reply and noted that it would "consider imposing sanctions on plaintiff for her late filing." Dkt. No. 27. Defendant filed its reply on August 24, 2018. See Dkt. No. 28.

On July 1, 2019, defendant wrote to the court to state that plaintiff had violated the preliminary injunction. See Gens Letter 1 & n.2 (Dkt. No. 30). Defendant states that until March 2018, plaintiff had complied with the terms of the preliminary injunction and paid $68,000 into escrow for use and occupancy. See id.; Fragomeni Decl. ¶¶3-4 (Dkt. No. 31). However, defendant states that plaintiff has failed to make any payments since. See id. ¶4;

4

Gens Letter 1 & n.2 (Dkt. No. 30). Defendant also informed the court of supplemental authority on the question of ineffective purported assignments of mortgage. See id. at 2. The defendant recently incorporated these allegations into a new motion to dissolve the preliminary injunction. See Dt. No. 34. Defendant alleges that plaintiff is now $248,000 in arrears on her payment obligations. Id. at 1. Plaintiff has not responded to the July 1, 2019 letter or the second motion to dissolve the preliminary injunction.

## III. JUDGMENT ON THE PLEADINGS STANDARD

"After the pleadings are closed -- but early enough not to delay trial -- a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Because rendition of judgment in such an abrupt fashion represents an extremely early assessment of the merits of the case, the trial court must accept all of the nonmovant's well-pleaded factual averments as true." Rivera-Gomez v. De Castro, 843 F.2d 631, 635 (1st Cir. 1988). In other words, as a motion for judgment on the pleadings "calls for an assessment of the merits of the case at an embryonic stage, the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom" in the nonmovant's favor. R.G. Fin. Corp. v. Vergara-Nunez, 446 F.3d 178, 182 (1st Cir. 2006).

A Rule 12(c) motion for judgment on the pleadings "is treated much like a Rule 12(b)(6) motion to dismiss." <u>Perez-Acevedo v. Rivero-Cubano</u>, 520 F.3d 26, 29 (1st Cir. 2008). Accordingly, in reviewing a motion for judgment on the pleadings, the court must "accept all of the non-movant's well-pleaded factual averments as true." <u>Rivera-Gomez</u>, 843 F.2d at 635. "Under <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544, 555 [2007], to survive a Rule 12(b)(6) motion (and, by extension, a Rule 12(c) motion) a complaint must contain factual allegations that 'raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true.'" <u>Perez-Acevedo</u>, 520 F.3d at 29. Such a motion should be denied if a plaintiff has shown "a plausible entitlement to relief." <u>Twombly</u>, 550 U.S. at 559. This means that the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (internal quotation omitted). A claim is facially plausible if the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> at 683. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." <u>Id.</u> at 678 (internal quotations omitted). The plausibility standard does not require "detailed factual

allegations," but does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

While the court must "take all factual allegations as true and . . . draw all reasonable inferences in favor of the plaintiff." Rodriguez-Ortiz v. Marao Caribe, Inc., 490 F.3d 92, 96 (1st Cir. 2007), the court must disregard "bald assertions, unsupportable conclusions, and opprobrious epithets." In re Citigroup, Inc., 535 F.3d 45, 52 (1st Cir. 2008); see also Penalbert-Roia v. Fortuno-Burset, 631 F.3d 592, 595 (1st Cir. 2011). The court "neither weighs the evidence nor rules on the merits because the issue is not whether plaintiffs will ultimately prevail, but whether they are entitled to offer evidence to support their claims." Day v. Fallon Cmty. Health Plan, Inc., 917 F. Supp. 72, 75 (D. Mass. 1996).

At this stage, "the district court may properly consider only facts and documents that are part of or incorporated into the complaint." Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009) (quotation omitted). However, in certain circumstances the court may also consider other documents as well. There are "narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiff['s] claim; or for documents sufficiently referred to in the complaint." Watterson v. Page, 987

F.2d 1, 3-4 (1st Cir. 1993); see also Schatz v. Republican St. Leadership Comm., 669 F.3d 50, 55-56 & n.3 (1st Cir. 2012); Beddall v. State St. Bank & Tr. Co., 137 F.3d 12, 17 (1st Cir. 1998). When such documents contradict an allegation in the complaint, the document "trumps the allegation[]." See Clorox Co. v. Proctor & Gamble Consumer Co., 228 F.3d 24, 32 (1st Cir. 2000) (quotations omitted).

For allegations of fraud, Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard that requires that the plaintiff state "with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To plead circumstances "with particularity," a plaintiff must specify "the who, what, where, and when of the allegedly false or fraudulent representation." Rodi v. S. New Engl. Sch. of Law, 389 F.3d 5, 15 (1st Cir. 2004) (quoting Alt. Sys. Concepts, Inc. v. Synopsis, Inc., 374 F.3d 23, 29 (1st Cir. 2004)); see also United States ex rel. Gagne v. City of Worcester, 565 F.3d 40, 45 (1st Cir. 2009) (the complaint "must specify the time, place, and content of an alleged false representation").

"There is, of course, a modest difference between Rule 12(c) and Rule 12(b)(6) motions. A Rule 12(c) motion unlike a Rule 12(b)(6) motion implicates the pleadings as a whole." Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 54 (1st Cir. 2006). Filed after the close of the pleadings, a Rule 12(c) motion is "based

solely on the factual allegations in the complaint and answer."
NEPSK, Inc. v. Town of Houlton, 283 F.3d 1, 8 (1st Cir. 2002). As
with a Rule 12(b)(6) motion, however, those factual allegations
may be augmented by "documents incorporated by reference into the
complaint, matters of public record, and facts susceptible to
judicial notice." Grajales v. Puerto Rico Ports Auth., 682 F.3d
40, 44 (1st Cir. 2012) (quoting Haley v. City of Boston, 657 F.3d
39, 46 (1st Cir. 2011).

IV.   FACTS

        The following allegations are taken from plaintiff's Verified
Complaint (Dkt. No. 1-1). Further detail is discussed in the
analysis below.

        On July 17, 2006, plaintiff closed on the purchase of a house
located   at   430   Grove   Street,   Needham,   Norfolk   County,
Massachusetts (the "Property"). When she closed on the Property,
she executed a note (the "Note") for $2,940,000. Id. ¶¶12, 25, 31
& Exs. A, C. The lender on the Note was America's Wholesale Lender.
Id. ¶31. To secure the Note, plaintiff granted a mortgage on the
Property (the "Mortgage") to Mortgage Electronic Registration
Systems, Inc. ("MERS"), as nominee for America's Wholesale Lender.
Id. ¶14.

        On February 16, 2016, David Andrews, a Document Execution
Specialist of Nationstar Mortgage LLC ("Nationstar"), completed a
Certification Pursuant to Massachusetts 209 C.M.R. §18.21A(2)(c)

9

(the "Certification"). Id. Ex. A ¶¶5-7. Andrews stated that plaintiff had defaulted on the Mortgage. Id. ¶4. As a result, Andrews wrote, Nationstar had initiated a foreclosure in defendant's name. Id.

Plaintiff alleges that defendant does not have standing to foreclose on the Property. She states that defendant does not own the Note. In addition, she states that assignments of the Mortgage following closing are "wild deeds" executed without proper authority. Therefore, she argues, the Mortgage was never effectively assigned to defendant. She also alleges that defendant failed to comply with Massachusetts law concerning required foreclosure procedures. Due to these alleged deficiencies, plaintiff argues, the court should quiet title in the Property and declare the Mortgage unenforceable. In addition, she alleges that defendant's attempts to foreclose on the Property, including allegedly fraudulent transfers of the Mortgage, entitle her to damages for intentional infliction of emotional distress.

IV.  DISCUSSION

As indicated earlier, plaintiff's Verified Complaint purports to state four causes of action: (1) injunction to stop and prevent wrongful foreclosure; (2) quiet title; (3) declaratory judgment that the mortgage on the property is unenforceable; and (4) intentional infliction of emotional distress. Defendant moves for judgment on each count. In addition, defendant asks the court

10

to dissolve the Preliminary Injunction because plaintiff has failed to comply with the conditions set by the Massachusetts Superior Court by failing to make the required payments since March 2018.

The court addresses each issue as follows.

A. Motion for Judgment on the Pleadings.

1. Defendant is Entitled to Judgment on Count 1.

Count 1 alleges that because defendant has no interest in the Note or Mortgage, and has not complied with the notice and foreclosure requirements under Massachusetts law, plaintiff is entitled to a preliminary and permanent injunction to enforce her quiet title and wrongful foreclosure claims. See Verified Compl. ¶¶69-74.[2]

However, "injunctive relief is not a stand-alone cause of action under Massachusetts or federal law." Comley v. Town of Rowley, 296 F. Supp. 3d 327, 332 (D. Mass. 2017) (quotation omitted). Accordingly, courts applying Massachusetts law have regularly dismissed stand-alone counts for injunctive relief because they "'state[] a claim for a remedy, not a cause of action'

---

[2]     Although the count is captioned "Preliminary Injunction and Permanent Injunction to Stop and Prevent Wrongful Foreclosure," the allegations under that heading refer only to a preliminary injunction, which has already been granted by the Massachusetts Superior Court. See June 14, 2017 Interlocutory Order on Prelim. Inj. (Dkt. No. 5, at 139).

and add[] nothing to the complaint where injunctive relief is specified in the 'prayers for relief' section of the complaint." Payton v. Wells Fargo Bank, N.A., No. 12-11540-DJC, 2013 WL 782601, *6 (D. Mass. Feb. 28, 2013) (collecting cases) (quoting Unitrode Corp. v. Linear Tech. Corp., No. 98-5983, 2000 WL 281688, *5 (Mass. Super. Ct. Feb. 17, 2000)).

Here, each of plaintiff's allegations regarding the injunction, liberally construed, pertain to wrongful foreclosure for lack of standing, and her prayer for relief includes a request for an injunction. As the allegations in Count 1 seek an injunction and are otherwise stated in Count 3, which alleges a cause of action for wrongful foreclosure, Count 1 is duplicative. Therefore, defendant is entitled to judgment on Count 1.

## 2.   Defendant is Entitled to Judgment on Count 2.

In Count 2 plaintiff alleges she is the sole owner in fee simple of the Property and seeks to quiet title pursuant to Mass. Gen. Laws ch. 240, §6. See Verified Compl. ¶¶75-83 (Dkt. No. 1-1). More specifically, plaintiff alleges that because the recorded assignments in the chain of title are invalid, defendant has no interest in the note, and her mortgage is not in the Bear Stearns Trust. Id. Therefore, she argues, because defendant has no interest in her property, she is entitled to quiet title. Id. ¶83.

General Laws ch. 240, §1, permits a cause of action to quiet title where "the record title of land is clouded by an adverse

12

claim, or by the possibility thereof . . . ." However, such an action must be brought by, as relevant here, "a person in possession of such land claiming an estate of freehold therein." Id. "In a 'title theory state' like Massachusetts, a mortgage is a transfer of legal title in a property to secure a debt. Therefore, when a person borrows money to purchase a home and gives the lender a mortgage, the homeowner-mortgagor retains only equitable title in the home; the legal title is held by the mortgagee." U.S Bank Nat'l Ass'n v. Ibanez, 941 N.E.2d 40, 51 (Mass. 2011). "Under Massachusetts law, a quiet title action 'cannot be maintained [until] both actual possession and the legal title are united in the plaintiff.'" Rezende v. Ocwen Loan Serv., LLC, 869 F.3d 40, 43 (1st Cir. 2017) (quoting Daley v. Daley, 14 N.E.2d 113, 116 (Mass. 1938)). Therefore, "[a] mortgagor lacks standing to bring a quiet title action as long as the mortgage remains in effect." Id.; see Flores v. OneWest Bank, F.S.B., 172 F. Supp. 3d 391, 396-97 (D. Mass. 2016) (dismissing count seeking to quiet title by mortgagor). "[W]hat matters" on a motion for judgment on the pleadings "is the existence of a mortgage, not whether the underlying loan is in default" or whether plaintiff challenges a later assignment of the mortgage. Rezende, 869 F.3d at 43. Therefore, the Supreme Judicial Court has affirmed dismissal of a quiet title action where the plaintiff alleged that a mortgage had been granted on the property but did not allege that the

mortgage was invalid or had been discharged. <u>See</u> <u>Bevilacqua v.</u>
<u>Rodriguez</u>, 955 N.E.2d 884, 895 (Mass. 2011).

Here, plaintiff in her Verified Complaint alleges that she
granted the Mortgage as collateral for the Note. She does not argue
that her initial grant of the Mortgage was invalid or that the
Mortgage has since been satisfied. Instead, plaintiff's
allegations pertain to the validity of later assignments of the
Note and Mortgage. Therefore, like the plaintiff in <u>Rezende</u>,
plaintiff lacks standing to maintain a quiet title action.
Accordingly, defendant is entitled to judgment on Count 2.

> 3.   <u>Defendant is Entitled to Judgment on Count 3
> Because Plaintiff has Not Plausibly Alleged that
> Defendant Lacks Standing to Enforce the Note.</u>

In Count 3 plaintiff seeks a declaratory judgment that states
that defendant lacks standing to foreclose on the Property and
that the recorded assignments of the mortgage have clouded title
such that no entity owns the mortgage. <u>Id.</u> ¶¶84-92. In the
alternative, plaintiff seeks a declaratory judgment stating which
entity does own the mortgage and has standing to foreclose. <u>See</u>
<u>id.</u> ¶92.

Defendant argues that plaintiff's complaint was not well-
pleaded because she requests a declaratory judgment in the cause
of action, rather than only in the prayer for relief. The court
addresses this argument first before considering whether plaintiff
has alleged a plausible claim to relief in alleging: that defendant

does not own the Note; that neither defendant nor anyone else can show privity of contract with respect to the Mortgage; and that defendant failed to follow Massachusetts law on foreclosure procedure.

          a.    *The Structure of Plaintiff's Complaint does not Render Count 3 Invalid.*

Defendant argues that plaintiff's complaint was not well-pleaded because she requests a declaratory judgment in the cause of action, rather than only in the prayer for relief. Because a declaratory judgment is a remedy, not an independent cause of action, defendant argues, Count 3 should be dismissed. See Dkt. No. 12, at 11-12 (citing Buck v. Am. Airlines, Inc., 476 F.3d 29, 33 n.3 (1st Cir. 2007)). However, Buck does not stand for the proposition that a formality can invalidate a count in the complaint.

In Buck, the First Circuit considered whether the Declaratory Judgment Act, 28 U.S.C. §2201(a), created a remedy or an independent, federal cause of action. See 476 F.3d at 34-35. The proponent of the latter position argued that the Declaratory Judgment Act created a cause of action that converted state-law claims into federal claims. Id. The proponent further argued that this would evade the preemption provision that Congress had included in airline deregulation legislation. Id. The First Circuit ruled that the Declaratory Judgment Act did not create an

15

independent federal cause of action for state-law claims. Id. The First Circuit did not state, however, that federal courts could not enter declaratory judgments where they otherwise had valid subject matter jurisdiction.

Buck, therefore, is inapposite. Accordingly, the court turns to the merits of the allegations.

> b.   *Plaintiff has Not Plausibly Alleged that Defendant Lacks Standing to Enforce the Note.*

Plaintiff alleges that defendant does not possess the Note and, therefore, lacks standing to foreclose. Verified Compl. ¶32 (Dkt. No. 1-1). In fact, she alleges, the original ink-signed Note executed by her cannot be located at all. Id.

In support, plaintiff points to an undated, stamped endorsement on what she alleges is an invalid copy of the Note, which purports to grant the interest then held by America's Wholesale Lender to an unknown (blank) entity.[3] Id. Ex. C (Dkt. No. 1-1, at 38 of 74).[4] Plaintiff further alleges that the person

---

[3]   Although assignment of a mortgage "in blank" may render that assignment void ab initio, endorsement of a financial instrument "in blank" makes it payable to the bearer or the person acting on the bearer's behalf. See Mass. Gen. Laws ch. 106, §§3-205(b), 3-301; Courtney v. U.S. Bank, N.A., 922 F. Supp. 2d 171, 174 (D. Mass. 2013). The affidavit satisfying Eaton v. Fed. Nat'l Mortg. Ass'n, 969 N.E.2d 1118 (Mass. 2012), discussed below, is adequate here as well. Therefore, plaintiff has not alleged a plausible claim concerning the requirements of the Note.

[4]   The endorsement reads:

16

whose name appears in the stamped endorsement, Michele Sjolander, has previously testified in another case that she was not present when her name was affixed to notes. Id. ¶¶35-37. As a result, plaintiff alleges, defendant is unlikely to be able to establish a reliable chain of custody for and a physical copy of the original Note as necessary to demonstrate standing for foreclosure. Id. ¶37.

Plaintiff's argument rests on a misapprehension of Massachusetts law. Although the Massachusetts Supreme Judicial Court has stated that the right to foreclose requires a party to possess the mortgage and the underlying note, that holding was nuanced. See Eaton v. Fed. Nat'l Mortg. Ass'n, 969 N.E.2d 1118, 1129-30 (Mass. 2012). Later in Eaton, the court stated: "we do not conclude that a foreclosing mortgagee must have physical possession of the mortgage note in order to effect a valid foreclosure." Id. at 1131. Instead, the foreclosing assignee of the mortgagee "may establish that it either held the note or acted

---

PAY TO THE ORDER OF

---

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC., A NEW YORK CORPORATION
DOING BUSINESS AS AMERICA'S WHOLESALE LENDER
BY: Michele Sjolander
MICHELE SJOLANDER
EXECUTIVE VICE PRESIDENT

17

on behalf of the note holder at the time of a foreclosure sale by filing an affidavit in the appropriate registry of deeds." Id. at 1133 n.28. Therefore, plaintiff's allegations do not plausibly state a claim to relief based on the assertion that defendant cannot establish "the physical location of the Note." Verified Compl. ¶37 (Dkt. No. 1-1).

Moreover, defendant in this case has filed an Affidavit Regarding Note Secured by a Mortgage to be Foreclosed ("Affidavit") with the Norfolk County Register of Deeds that establishes defendant as the note holder. See Dkt. No. 12, at 11 n.9 (citing Dkt. No. 5, at 120). Defendant filed the Affidavit in state court as an exhibit during the hearing on the motion for preliminary injunction and, therefore, plaintiff has long had notice of it. See Dkt. No. 5, at 120. Plaintiff has not challenged the validity of the Affidavit,[5] and the court takes judicial notice of the

---

[5]     Defendant only referred to the Affidavit in a footnote to its memorandum in support of its motion for judgment on the pleadings. See Dkt. No. 12, at 11 n.9. However, plaintiff was on notice of the Affidavit and had ample opportunity to respond. As noted above, the Affidavit was first filed on June 12, 2017 as an exhibit to a brief defendant filed in state court. See Dkt. No. 12, at 120. The defendant cited the Affidavit in that brief, arguing that it established defendant as the note holder. See Id. at 86. Plaintiff alleges in her complaint that there were "no documents recorded at the Norfolk Registry of Deeds for Plaintiff's Property from the execution date of Plaintiff's Note and Mortgage, July 16, 2006, up until November 2011." Verified Compl. ¶42 (Dkt. No. 1-1). The complaint is dated June 4, 2017, which is more than a year after the Affidavit was filed. See Dkt. No. 5, at 120. If plaintiff searched the Norfolk Registry of Deeds when she filed her

Affidavit as an official public record. See Grajales, 682 F.3d at 44 ("matters of public record" can be considered when deciding a motion for judgment on the pleadings); Benjamin v. Fremont Inv. & Loan, No. 17-11727-PBS, 2018 WL 4017595, at *2 (D. Mass. Aug. 22, 2018) (taking judicial notice at the motion to dismiss stage of a recorded Affidavit Regarding Note Secured by Mortgage Being Foreclosed).

Under Eaton, the Affidavit is sufficient to demonstrate that defendant is the note holder, regardless of whether Michele Sjolander can confirm if and under what circumstances the Note was endorsed. See Eaton, 969 N.E.2d at 1133 n.28. Defendant has no obligation to prove the chain of custody. The Affidavit is sufficient to prove ownership. Id. Plaintiff, therefore, fails to state a plausible claim for relief based on allegations that defendant "will never be able to establish" either "a coherent and legitimate chain of custody for Plaintiff's Note" or "ownership of the note." Verified Compl. ¶37 (Dkt. No. 1-1).

Accordingly, plaintiff has not plausibly alleged that defendant lacks standing to enforce the Note.

---

complaint, she should have been aware of the Affidavit. Therefore, it is possible that the Complaint was filed in violation of Federal Rule of Civil Procedure 11(b), which, among other things, requires "an inquiry reasonable under the circumstances" before allegations are made.

c.    *Mortgage*

As described earlier, when plaintiff purchased the Property, she executed the Note for America's Wholesale Lender and contemporaneously granted the Mortgage to MERS, as nominee for America's Wholesale Lender. Verified Compl. ¶¶12, 14, 25, 31 & Exs. A, C (Dkt. No. 1-1). She alleges that defendant does not have authority to foreclose on the Property and refers to five assignments of the Mortgage and underlying Note that she alleges have been recorded with the Norfolk County recorder's office. Id. ¶¶8, 9.

- The first recorded assignment ("Assignment 1") was executed on October 28, 2011, by MERS to Citibank, N.A., as trustee for the holders of the Trust. See id. ¶17 & Ex. D.

- The second recorded assignment ("Assignment 2") was executed on July 30, 2013, by Bank of America, N.A., to Nationstar. See id. ¶53 & Ex. F.

- The third recorded assignment ("Assignment 3") was executed on February 3, 2015. See id. ¶57 & Ex. G. The face of Assignment 3 states that it is a "Corrective Gap Assignment" that "is being recorded to remedy a gap in the recorded ownership interest" and states that the Mortgage was assigned by defendant to Bank of America, N.A. See id. Ex. G. Assignment 3 does not appear to state when the purported assignment took place. See id.

- The fourth recorded assignment ("Assignment 4") was also executed on February 3, 2015. See id. ¶57 & Ex. G. Assignment 4 states that the Mortgage was assigned by Nationstar to defendant. See id. ¶¶17, 63.

- The fifth recorded assignment ("Assignment 5") was executed on July 30, 2015, by Nationstar as attorney-in-fact to Citibank, N.A., as trustee for the holders of the Trust, to defendant, as successor trustee to Citibank, N.A., as trustee for the holders of the Trust. See id. ¶66 & Ex. I.

Plaintiff alleges that there is no chain of title to defendant because each of Assignments 1 to 5 are each invalid. Therefore, she argues, defendant lacks standing to foreclose.

The parties agree that Assignments 2, 3, and 4 are invalid. They disagree as to the consequences of that invalidity. In addition, and relatedly, defendant argues that plaintiff has failed to plausibly allege that Assignments 1 and 5 are invalid.

Because the parties agree that Assignments 2, 3, and 4 are invalid, the court is addressing Assignments 1 and 5 first.

i.   <u>Plaintiff has not Plausibly Alleged that Assignment 1 is Invalid.</u>

According to the Norfolk County recorder's office, Assignment 1 was executed on October 28, 2011, by MERS to Citibank, N.A., as trustee for the holders of the Trust. <u>See</u> Compl. ¶17 (Dkt. No. 1-1); <u>id.</u> Ex. D. The face of the assignment says that it was signed by Swarupa Slee as Vice-President of MERS and notarized by Shannon Steeg, a Los Angeles, California notary, and recorded on November 3, 2011. <u>See id.</u> ¶43; <u>id.</u> Ex. D.

Plaintiff challenges Assignment 1 in three respects. First, plaintiff alleges that based on her investigation, Slee does not appear to be "an actual individual" and is instead a fictitious character who never signed Assignment 1. <u>See id.</u> ¶44. Because a fictitious character could not have appeared in front of a notary, plaintiff alleges that the notary's signature was a forgery as

well. See id. In support, plaintiff submits variations of signatures by "Swarupa Slee" from various documents that differ greatly. See id. ¶45; id. Ex. E. Plaintiff alleges that because the document was forged, it is void ab initio. In her view, the void assignment did not transfer any interest in the Mortgage or Note to the Trust and cannot be relied upon by defendant in foreclosure proceedings. See id. ¶¶46-52.

The arguments concerning Swarupa Slee do not state a plausible claim. The relevant Massachusetts statute states that "[an] assignment of mortgage[,] . . . if executed before a notary public, . . . by a person purporting to hold the position of president, vice president, treasurer, . . . or other similar office or position, including assistant to any such office or position, of the entity holding such mortgage, or otherwise purporting to be an authorized signatory for such entity, or acting under such power of attorney on behalf of such entity, . . . shall be binding upon such entity and shall be entitled to be recorded." Mass. Gen. Laws ch. 183, §54B; see also Lopez v. Mortg. Elec. Registration Sys., Inc., 486 B.R. 221, 229 (Bankr. D. Mass. 2013) (citing cases). Here, Assignment 1 states that it was executed by Swarupa Slee as Vice President of MERS and notarized by Shannon Steeg, a Los Angeles, California notary. See id. ¶43; id. Ex. D. That is all that is required under Mass. Gen. Laws ch. 183, §54B. See Lopez, 486 B.R. at 229.

Moreover, even assuming, without finding, that the notary did not exist,[6] or was misled in believing that the person signing the assignment was Slee, plaintiff would not be entitled to relief because MERS, the assignor, was not deceived, and defendant does not seek to void the transaction. Where an assignment is "merely voidable" rather than void, a mortgagor does not have standing to challenge it. Culhane v. Aurora Loan Servs. of Neb., 708 F.3d 282, 291 (1st Cir. 2013). As the First Circuit has affirmed:

> Because the record contains no facts to contradict the [ ] assignment's facial compliance with the statutory requirements of Mass. Gen. Laws ch. 183, §54B, at most the assignment was voidable. See Galvin v. U.S. Bank, N.A., 852 F.3d 146, 158 (1st Cir. 2017) ("Under Massachusetts law, as long as the assignor is the record holder of the mortgage at the time of the assignment . . . an assignment that complies with . . . [section 54B] 'cannot be shown to be void.'") (citations omitted). Therefore, plaintiff has no standing to challenge the assignment. See Wells Fargo Bank, N.A. v. Anderson, 89 Mass. App. Ct. 369, 372 (2016).

Aja v. Ocwen Loan Servicing, LLC, No. CV 16-10007-FDS, 2017 WL 5900961, at *4 (D. Mass. Nov. 30, 2017), aff'd, 754 F. App'x 13 (1st Cir. 2019). See also Chomo v. Full Spectrum Lending, Inc.,

---

[6]     The assignment of the mortgage bears the stamped seal of Shannon Steeg, Notary Public for Los Angeles County, California. See Dkt. No. 1-1, at 40. Plaintiff alleges that this notary acknowledgement is a forgery. Id. ¶44. However, she provides no support for this claim beyond the assertion that Swarupa Slee is a fictitious character and "cannot sign a document to be authenticated by a notary acknowledgement." Id. This is not sufficient to allege a plausible inference that the notary acknowledgement was forged. However, as explained above, plaintiff's argument that the assignment is void is unmeritorious in any event.

No. 17-CV-12466-DJC, 2019 WL 3253701, at *4 (D. Mass. July 19, 2019) ("[A] Massachusetts appellate court has rejected a plaintiff's argument that an assignment of a mortgage was defective based on an allegedly 'robo-signed' document where the plaintiff had not contested the fact that the assignor validly held the mortgage.") (citing Wells Fargo Bank, N.A. v. Anderson, 89 Mass. App. Ct. 369, 372 (2016)). Accordingly, plaintiff has not stated a plausible claim for relief based on Slee's signature.

Second, plaintiff alleges that MERS lacked the authority to assign the Mortgage because it was the lender's nominee. See id. ¶¶14, 52. However, the Massachusetts Appeals Court has rejected the suggestion that MERS, as nominee for a lender, lacks the authority to assign a mortgage. See Sullivan v. Kondaur Capital Corp., 7 N.E.3d 1113, 1118-19. Therefore, plaintiff has not plausibly alleged that MERS lacked such authority in this case.

Third, plaintiff alleges that Assignment 1 was not effective because it purports to assign the Mortgage to the Trust, but did not comport with the Trust's Prospectus, Prospectus Supplement, and Pooling and Servicing Agreement (the "Deal Documents"). Id. ¶¶11-13, 50. The Deal Documents required assignment of the Mortgage to the Trust by September 29, 2016, but Assignment 1 is dated October 28, 2011. Plaintiff argues that because Assignment 1 was not timely under the Deal Documents, it is void, and her Mortgage was never assigned to the Trust. Therefore, plaintiff contends

that defendant, as trustee for the Trust, lacks authority to foreclose. The First Circuit has rejected this argument. "[V]iolations of the terms of a [Pooling and Servicing Agreement] would result in the assignment being voidable and not void." In re Sheedy, 801 F.3d 12, 25 (1st Cir. 2015). Again, a mortgagor lacks standing to challenge an assignment that may be voidable but is not void. See Culhane, 708 F.3d at 291. Therefore, plaintiff has failed to plausibly allege that her Mortgage was not transferred to the Trust.

Accordingly, plaintiff does not plausibly allege that defendant lacks standing to foreclose due to a defect in Assignment 1.

### ii.   Plaintiff has not Plausibly Alleged that Assignment 5 is Invalid.

Assignment 5 was purportedly executed on July 30, 2015, by Nationstar as attorney-in-fact to Citibank, N.A., as trustee for the holders of the Trust, to defendant, as successor trustee to Citibank, N.A., as trustee for the holders of the Trust. See Verified Compl. ¶66 (Dkt. No. 1-1); id. Ex. I. The face of the assignment says that it was signed by Kira Allen as Assistant Secretary of Nationstar as attorney in fact to CitiBank, N.A. in its capacity as trustee, and was notarized by Valencia Metcalf, a Texas notary. See id. ¶66; id. Ex. I.

Plaintiff argues that Assignment 5 suffers from three defects that mean it is invalid. In no respect does she allege a plausible claim.

First, plaintiff alleges that defendant's counsel contrived Assignment 5 in an "attempt to fix the many wild deeds/broken chain of title" in Assignments 1 to 4. Id. ¶67. However, although plaintiff alleges in a conclusory manner that Assignment 5 was made fraudulently, she does not provide any detail to support this contention. See Fed. R. Crim. P. 9(b) (requiring heightened pleading standard for fraud). Conclusory allegations do not state a plausible claim for relief.

Second, plaintiff alleges that Assignment 5 is a "wild deed" because the granting entity does not match the assignee in Assignments 2, 3, or 4. However, as noted earlier, the parties agree that Assignments 2, 3, and 4 are invalid because they were not made by the proper grantor. An assignment is void ab initio where it was not "made by a party that itself held the mortgage" or was acting with the authority to assign it. Ibanez, 941 N.E.2d at 53. This means that Assignments 2, 3, and 4 were nullities and have no effect on the parties' claims to the Property. See Germano v. U.S. Bank Nat'l Ass'n, No. 17-SBQ-36138-12-001 (HPS), 2018 WL 986065, *2 (Mass. Land Court Jan. 2, 2018) (noting that such a "nullity" was "properly labeled . . . as 'ineffective'"). Therefore, what matters is that the granting entity of Assignment

26

5 is the same as the assignee of Assignment 1. Assignment 1 was assigned to CitiBank, N.A. <u>See</u> Verified Compl. Ex. D (Dkt. No. 1-1, at 39 of 74). Assignment 5 was assigned by CitiBank, N.A., to defendant. <u>See</u> <u>id.</u> Ex. I (Dkt. No. 1-1, at 60). Therefore, Assignments 1 and 5 "demonstrate a clear chain of title to the present holder of the [M]ortgage." <u>Germano</u>, 2018 WL 986065 at *2. Accordingly, plaintiff has not plausibly alleged that Assignment 5 is a "wild deed" that would not give defendant standing to foreclose.

Third, plaintiff argues that Citibank N.A., as trustee for the Trust, could not assign the Mortgage to defendant as successor Trustee. Plaintiff cites no authority for this proposition. Yet even if plaintiff's argument had merit, it would not be material. At most, plaintiff appears to argue that Assignment 5 was not required because, by becoming successor Trustee, defendant already had control over the Mortgage. If true, Assignment 1 would suffice for defendant to have standing to foreclose.

Accordingly, plaintiff does not plausibly allege that defendant lacks standing to foreclose due to a defect in Assignment 5.

iii.    **Plaintiff has not Plausibly Alleged that the Invalidity of Assignments 2, 3, and 4 Means that Defendant Lacks Standing to Foreclose.**

Assignment 2 was purportedly executed on July 30, 2013, by Bank of America, N.A., to Nationstar. See id. ¶53; id. Ex. F. Assignments 3 and 4 were both executed on February 3, 2015, by Nadine Homan. See id. ¶57; id. Ex. G.[7] The face of Assignment 3 states that it is a "Corrective Gap Assignment." See id. It states that "is being recorded to remedy a gap in the recorded ownership interest" based on an assignment from defendant to Bank of America, N.A. See id. Plaintiff alleges that in Assignment 4, Nadine Homan again and on the same date, as Vice President of Loan Documentation for Nationstar, assigned the Mortgage to defendant. Id. ¶¶17, 63.

The parties agree that Assignments 2, 3, and 4 are invalid.[8] However, as indicated earlier, they disagree as to the consequences of that invalidity. Plaintiff argues that each of Assignments 2,

---

[7]    Exhibit G to plaintiff's Verified Complaint appears to contain only Assignment 3. It is not clear whether plaintiff is alleging that this document contains both Assignments 3 and 4, or whether plaintiff erroneously omitted Assignment 4.

[8]    Plaintiff alleges that there are numerous defects in Assignments 2 to 4. First, she alleges in a conclusory manner that Assignment 2 was made fraudulently. Second, plaintiff alleges that Assignments 3 and 4 are invalid because they were signed by Nadine Homan, who plaintiff believes does not exist. See id. ¶¶57-60; id. Ex. H. Third, plaintiff alleges that the very fact that Assignments 3 and 4 were executed by the same person on the same date but purport to assign the Mortgage to two different entities is inherently suspect and fraudulent. See id. ¶¶63-64.

3, and 4 results in a clouded title that prevents a valid foreclosure from taking place. See Compl. ¶¶16, 23, 24, 41 (Dkt. No. 1-1). Defendant argues that because Assignments 2, 3, and 4 (purportedly granted by Bank of America, N.A., defendant, and Nationstar, respectively) were not granted by an entity with the requisite authority, they are irrelevant to the chain of title. Instead, defendant argues, what matters is that Assignments 1 and 5 are valid and, as described above, show a clear chain of title to defendant.

As explained earlier, where an assignment was not "made by a party that itself held the mortgage" or was acting with the authority to assign it, the assignment is void ab initio. Ibanez, 941 N.E.2d at 53. A void assignment is a legal nullity and has no effect on other claims to the Property. See Germano, 2018 WL 986065 at *2 (noting that such a "nullity" was "properly labeled . . . as 'ineffective'"). Nor does a void assignment cloud title. "[T]here is nothing magical in the act of recording an instrument with the registry that invests an otherwise meaningless document with legal effect." Bevilacqua, 955 N.E.2d at 892. Rather, "'mere assertions . . . whether recorded or unrecorded, do not constitute a cloud upon title . . . .'" Id. (quoting Nickerson v. Loud, 115 Mass. 94, 97-98, 1874 WL 9518, *3 (Mass. 1874)). "It is the effectiveness of a document that is controlling rather than its mere existence."

Id. Plaintiff does not cite any authority to the contrary to support the proposition that faulty assignments cloud title.[9]

Assignments 2, 3, and 4 are void and ineffective. Therefore, they do not cloud title to the Property. Accordingly, plaintiff fails to plausibly allege that defendant lacks standing to foreclose because of the defects in Assignments 2 to 4.

### d.    *Foreclosure Procedures*

Massachusetts law requires foreclosing mortgagees to file and provide a certificate pursuant to 209 C.M.R. §18.21A(2)(c). See Dkt. No. 1-1 ¶¶19-20. As explained earlier, in 2016, David Andrews completed the Certification in 2016 on behalf of Nationstar. Id. Ex. A ¶¶5-7.

Plaintiff alleges that the Certification was defective. More specifically, she alleges that the Certification provided by Andrews listed only the first and fifth assignments that were recorded in Norfolk County. See id. ¶¶20-21. She also alleges that defendant has admitted that the second, third, and fourth recorded

---

9    Plaintiff relies on an expert affidavit from Marie McDonnell to support the proposition that "wild deeds" create a cloud on title that renders a property unmarketable. See Dkt. No. 21-1, ¶23. Expert testimony on the law is generally impermissible. See, e.g., Marx & Co. v. Diners' Club Inc., 550 F.2d 505, 509-10 (2d Cir. 1977). Moreover, to the extent McDonnell is opining on Massachusetts law, she is incorrect. In any event, whether a property is not marketable as a matter of fact is not the same as the legal issue of whether a defendant has the authority to foreclose.

assignments were omitted from the Certification and "are ineffective as they do not have the proper grantor entity thereupon." Id. ¶ 22; id. Ex. B (the "Certificate"). Therefore, she argues, defendant failed to comply with the procedural requirements and is not entitled to foreclose on the Property. Id. ¶24.

Under Massachusetts law, an entity seeking to foreclose must file and provide to the mortgagor both a notice of foreclosure and a certification of the chain of title. See 209 C.M.R. §18.21A(2)(c). This provision requires a loan servicer to "certif[y] the chain of title and ownership of the note and mortgage from the date of the recording of the mortgage being foreclosed upon." Id. The purpose of the certificate is to demonstrate the right to foreclose, by "demonstrat[ing] an unbroken chain of assignments of the mortgage in order to foreclose a mortgage, and . . . that the entity holds the note (or acts as authorized agent for the note holder) at the time it commences foreclosure." U.S. Bank Nat'l Ass'n v. Mistovich, 147 N.E.3d 1107, 2020 WL 2894729, *3 (Mass. App. Ct. June 3, 2020) (quoting Sullivan, 7 N.E.3d at 1119).

Here, plaintiff focuses on the fact that defendant omitted the second, third, and fourth recorded assignments from the Certificate. As explained earlier, however, these assignments were void because the purportedly granting entity did not own the

31

Mortgage at the time of the supposed assignment. Therefore, they were not part of the chain of title and were properly excluded from the Certificate. See Germano, 2018 WL 986065 at *2.

Accordingly, plaintiff has failed to plausibly allege that defendant may not foreclose because it did not comply with the required procedures.

Therefore, the defendant is entitled to judgment on Count 3.

### 4. Count 4: Intentional Infliction of Emotional Distress

Count 4 alleges that by seeking to foreclose on the Property without a valid interest in the mortgage, and by doing so with a defective notice of sale and fraudulent assignment of the mortgage, defendant intentionally inflicted emotional distress on plaintiff. See Verified Compl. ¶¶93-97 (Dkt. No. 1-1).

"The standard for making a claim of intentional infliction of emotional distress is very high" under Massachusetts law. Polay v. McMahon, 10 N.E.3d 1122, 1128 (Mass. 2014) (quoting Doyle v. Hasbro, Inc., 103 F.3d 186, 195 (1st Cir. 1996)).

> A claim for intentional infliction of emotional distress requires "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of [the] conduct; (2) that the conduct was 'extreme and outrageous,' was 'beyond all possible bounds of decency' and was 'utterly intolerable in a civilized community;' (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was 'severe' and of a nature 'that no reasonable [person] could be expected to endure it.'" . . . Recovery on such a claim requires

> more than "that the defendant has acted with an intent
> which is tortious or even criminal, or that he has
> intended to inflict emotional distress, or even that his
> conduct has been characterized by 'malice' or a degree
> of aggravation which would entitle the plaintiff to
> punitive damages for another tort."

Doyle, 103 F.3d at 195 (citations omitted).

Accordingly, "conclusory allegations of 'continued threats to collect upon and enforce a legally enforceable debt' and the 'drafting and execute[on] of legally deficient documents to deceive [a] [c]ourt of defendant's standing'" have been correctly found "insufficient to state a claim of intentional infliction of emotional distress." Koufos v. U.S. Bank, N.A., 939 F. Supp. 2d 40, 53 (D. Mass. 2013). Rather, "[c]ourts applying Massachusetts law have consistently dismissed [intentional infliction of emotional distress] claims" in foreclosure cases, even where defendants used questionable business practices or communicated improperly during debt collection, because "this behavior does not rise to the level of extreme and outrageous." McCusker v. Ocwen Loan Servs., LLC, No. 14-13663-MGM, 2015 WL 4529986, *7 (D. Mass. July 27, 2015) (collecting cases).

Here, plaintiff alleges that defendant knowingly and intentionally attempted to foreclose on the Property despite its knowledge that it lacked standing to foreclose. See Dkt. No. 1-1, ¶¶94-95. In addition, plaintiff alleges that defendant filed a further fraudulent assignment to convey the interest in the

Property to itself. See id. Plaintiff characterizes this as illegal debt collection practices, but does not reference state or federal debt collection law. See id. ¶97. Finally, plaintiff alleges that defendant's actions "caused severe harm, significant economic damages, emotional harm, and significant emotional distress as Plaintiff has desperately attempted to stave off foreclosure, upset to her family, and homelessness . . . ." Id. ¶96.

These conclusory allegations, without more, do not plausibly allege "extreme and outrageous" conduct. As described earlier, courts have dismissed similar cases where the defendants allegedly used questionable business practices, violated debt collection laws, or drafted deficient documents to deceive a court. See, e.g., Koufos, 939 F. Supp. 2d at 53; McCusker, 2015 WL 4529986 at *7. In this case, defendant's actions were lawful. Therefore, plaintiff does not allege a plausible claim of intentional infliction of emotional distress. Accordingly, defendant is entitled to judgment on Count 4.

### B. Motions to Dissolve the Preliminary Injunction

Because defendant is entitled to judgment on all counts, the June 14, 2017 preliminary injunction prohibiting defendant from foreclosing on the property is being dissolved. Moreover, a preliminary injunction is an equitable remedy. See, e.g., Hecht Co. v. Bowles, 321 U.S. 321, 329 (1944). Plaintiff has long failed to make the monthly payments that are a condition of the

preliminary injunction. See Dkt. No. 34. She has been living in the Property for free and is now allegedly $248,000 in arrears. Id. This is inequitable. Therefore, the court would dissolve the preliminary injunction even if judgment would not be entered for defendant on all counts.

V.   ORDER

In view of the foregoing, it is hereby ORDERED that:

1.   Defendant's Motion to Dissolve Preliminary Injunction (Dkt. No. 34) is ALLOWED and the Preliminary Injunction issued on June 14, 2017 is DISSOLVED.

2.   Defendant's Motion for Judgment on the Pleadings (Dkt. No. 11) is ALLOWED.

3.   Judgment shall enter for the defendant.


UNITED STATES DISTRICT JUDGE